## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHAD YEAMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-04-820-T |
| | ) | |
| RON WARD, Director of the Oklahoma | ) | |
| Department of Corrections, MIKE MULLIN, | ) | |
| Warden of the Oklahoma State Penitentiary, | ) | |
| MARK LUTTRULL, DAVID HENNEKE, | ) | |
| ROBERT RAINEY, ERNEST GODLOVE, | ) | |
| TED LOGAN, BEVERLY YOUNG, and | ) | |
| EARNEST WARE,  Members of Oklahoma | ) | |
| Board of Corrections, and DON | ) | |
| WAGENKNECHT, Food Service Supervisor | ) | |
| of the Oklahoma State Penitentiary, in their | ) | |
| Individual and Official Capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* brings this action pursuant to 42 U.S.C. §

1983 alleging violations of his federal constitutional rights.  The matter has been referred for

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  Three motions are

pending: (1) Plaintiff's Motion to Strike [Doc. #38] to which Defendants have responded

[Doc. #44]; (2) Plaintiff's Motion for Partial Summary Judgment [Doc. #39] (Plaintiff's

Motion); and (3) Defendants' cross-motion for summary judgment (*see* Defendants'

Amended Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for

Summary Judgment/Motion to Dismiss) [Doc. #50/64] (Defendants' Motion).  Plaintiff has

responded to Defendants' Motion [Doc. #52] (Plaintiff's Reply).  Having been fully briefed,

these motions are at issue.

**Background and Claims Presented**

At all times relevant to this action, Plaintiff was incarcerated at the Oklahoma State Penitentiary (OSP) and housed in H-Unit of administrative segregation.[1] Plaintiff challenges certain conditions of his confinement which, he maintains, are the result of policies promulgated and/or implemented by Defendants.  Plaintiff seeks compensatory and punitive damages as well as prospective injunctive relief.[2]

In Count I, Plaintiff claims that his Eighth Amendment rights to be free of cruel and unusual punishment have been violated by certain policies and conditions of his confinement:

> 1.      Plaintiff alleges that Defendants Ward, Mullin, Luttrull, Henneke, Rainey, Godlove, Logan, Young, and Ware have been deliberately indifferent to Plaintiff's safety in that policies which preclude prisoners assigned to administrative segregation from participating in constructive and rehabilitative activities effectively enforce idleness which, in turn, increases the possibility of prisoner violence.  Plaintiff contends that a new policy which mandates the loss of access to art materials, musical instruments, beadwork, yarn crafts, televisions, radios, and so on for a minimum of six months for minor offenses and a maximum of ten years for major offenses is largely responsible for the forced idleness and resulting danger.

Amended Complaint at 6-7, 15-16.

> 2.      Plaintiff alleges that prisoners assigned to the disciplinary segregation unit are required to wear shackles and to be handcuffed behind their

---

[1]Plaintiff was transferred to a prison facility in California on May 4, 2005.  *See* Doc. #62.

[2]Because Plaintiff is no longer incarcerated at OSP, his claims for prospective injunctive relief are moot. *See McAlpine v. Thompson*, 187 F.3d 1213, 1218 (10th Cir. 1999) (inmate claims against prison officials for prospective injunctive relief are mooted by the inmate's transfer to another facility in the absence of a demonstration of the likelihood of retransfer (which may not be based on " mere speculation.")) (*citing Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996); *Knox v. McGinnis*, 998 F.2d 1405, 1412-15 (7th Cir. 1993)).

backs any time they are outside their assigned cells, even during their
one hour of outdoor recreation time.

Amended Complaint at 7-8, 15-16.

3.      Plaintiff alleges that all prisoners assigned to administrative segregation
        are subjected to dangerous food service practices in that the food trays
        are served from open carts causing food to be served at room
        temperature which is conducive to bacterial growth.

Amended Complaint at 8-10, 15-16.

4.      Plaintiff alleges that the continual lock down policy, where prisoners
        are confined to their cells twenty-three hours per day, causes sensory
        deprivation and general physical and mental deterioration.

Amended Complaint at 10-11, 15-16.

5.      Finally, Plaintiff contends that prisoners assigned to administrative
        segregation are denied access to appropriate sanitary agents to maintain
        a healthy environment.  He alleges that prisoners are provided with
        only one cleaning agent, Simple Green, which does not kill fungus and
        certain viruses.

Amended Complaint at 11-12, 15-16.  In addition, Plaintiff states that Defendants Ward,

Mullin, Luttrull, Henneke, Rainey, Godlove, Logan, Young, and Ware have adopted

practices of handling his legal mail which often results in undue delay.  Amended Complaint

at 14.  Liberally construed, this claim alleges denial of access to the courts, a right guaranteed

by the Sixth Amendment.

        In Count II, Plaintiff contends that his First Amendment right to freedom of speech

is violated by Defendants' policy of precluding even indirect use of the internet.  According

to Plaintiff, the policy restricts the ability of prisoners to seek pen pals and to access legal and

religious materials.  Amended Complaint at 10; 16-17.

In Counts III and IV, Plaintiff contends that Defendants' policy of denying him educational opportunities and access to leisure library services violates his due process and equal protection rights. He states that inmates assigned to administrative segregation are thus denied the "liberty interest created by the laws of the State of Oklahoma and the United States" in accessing educational opportunities and leisure library services.

In Count V, Plaintiff alleges that the same conditions of his confinement which violate the Eighth Amendment also violate the International Covenant on Civil and Political Rights and other treaties to which the United States is a signatory nation.

## Standard of Review

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. *Kaul v. Stephan*, 83 F. 3d 1208, 1212 (10th Cir. 1996); *Calhoun v. Gaines*, 982 F.2d 1470, 1472 (10th Cir. 1992); *Manders v. State of Oklahoma*, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." *Id.* Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat

summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Additionally, a district court is required to review complaints seeking redress from a governmental entity or officer and dismiss the complaint or any portion of the complaint which fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

<u>Analysis of Pending Motions</u>

<u>Plaintiff's Motion to Strike</u>

Plaintiff has moved to strike two affidavits included in the Special Report as Attachments 37 and 39.[3]  Plaintiff contends that the affiants do not personally participate in the activities they describe in their affidavits, thus violating Rule 56(e) of the Federal Rules of Civil Procedure[4] and Rule 602 of the Federal Rules of Evidence.[5]

The first is the affidavit of Layne Davison who identifies himself as Unit Manager of H Unit at OSP and states that he is responsible for the overall operation of the Unit.  Among other things, Mr. Davison states,

---

[3]The Special Report has been entered into the Court's electronic records as Document Nos. 25, 26 and 27.

[4]Rule 56(e) states in relevant part, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed.R.Civ.P. 56(e).

[5]Rule 602 states in relevant part, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. 602.

> I can also state that the exercise yard is searched between uses; . . . Common areas, to include the showers and the food serving area, are cleaned by unit workers and inspected daily to ensure compliance with health and sanitation standards . . . . I can also state that food temperatures are monitored during the food serving process. Steam tables are utilized to maintain hot food items at optimum temperature and the meals are promptly served to ensure palatability of the food.

Special Report, Attachment 37. Mr. Davison also states that the "matters contained within this affidavit are within my personal knowledge and are both true and correct." *Id.*

The second affidavit is that of Defendant Don Wagenknecht who identifies himself as Food Service Manager III at OSP and states that he is responsible for providing food service to the inmate population. Defendant Wagenknecht states,

> Steam tables are utilized on each unit to maintain the optimum serving temperature to ensure palatability of the food. Unit staff monitor food temperatures during the serving process to ensure compliance. Cold food items are maintained at 41 degrees or below. . . . The matters contained within this affidavit are within my personal knowledge and are both true and correct.

Special Report, Attachment 39.

According to Plaintiff, the affidavits should be stricken:

> (1) Mr. Davison does not personally conduct any of the alleged yard searches nor is he present during yard exchanges; (2) Mr. Davison does not personally conduct the alleged 'daily inspections' of Plaintiff's housing quad; and (3) Mr. Wagenknecht and Mr. Davison do not personally participate in the food provisions on the Plaintiff's housing quad.

Motion to Strike at 3.

The affidavits challenged by Plaintiff are subscribed and sworn to by Mr. Davison and Defendant Wagenknecht respectively. Each swears that the statements contained in his affidavit are based upon his personal knowledge. A prison official can have personal

knowledge of prison procedures without personally participating in implementing the procedures.  Contrary  to Plaintiff's assertions, these affidavits do not violate either Rule 56 or Rule 602 and may, therefore, be considered by the Court for purposes of ruling on the cross-motions for summary judgment.  Plaintiff's Affidavit, attached to his Motion to Strike, should also be considered by the Court when determining the weight and credibility of the statements contained in the affidavits. Because Plaintiff has not shown that the affidavits in question were presented in bad faith or solely for the purpose of delay, *see* Rule 56(g), the affidavits are considered in the Court's analysis of the cross-motions for summary judgment. Plaintiff's Motion to Strike should be denied.

## Cross-Motions for Summary Judgment

Plaintiff seeks partial summary judgment on his Eighth Amendment claim that the only cleaning supply provided to prisoners, Simple Green, is not adequate to kill all potential pathogens.  In Defendants' Motion, Defendants challenge Plaintiff's Motion for Partial Summary Judgment as premature under Rule 56 of the Federal Rules of Civil Procedure. Defendants also move for dismissal of Plaintiff's action on the ground that Plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Finally, Defendants claim entitlement to summary judgment based on qualified immunity and on Plaintiff's alleged failure to show an affirmative link between Defendants and any unconstitutional act.[6]

---

[6]Because Defendants are otherwise entitled to summary judgment or dismissal, the "personal participation" defense is not addressed.  The Court notes, however, that Plaintiff's claims are all (continued...)

**Rule 56**

Defendants contend that Plaintiff's Motion for Partial Summary Judgment should be dismissed pursuant to Rule 56(a) which provides that:

> A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

Fed.R.Civ.P. Rule 56(a).  Defendants state that Plaintiff's filing of his Motion for Partial Summary Judgment on the same day he filed his Amended Complaint violates Rule 56(a). The action was "commenced," however, by the filing of the original Complaint on July 2, 2004.  *See* Fed.R.Civ.P. Rule 3 ("A civil action is commenced by filing a complaint with the court.").  Here, no new parties were added to the Amended Complaint, and Defendants were sufficiently alerted to the claims raised by Plaintiff that they cannot claim prejudice. Accordingly, it is recommended that this basis for denying Plaintiff's Motion for Partial Summary Judgment be rejected.

**Exhaustion of Administrative Remedies**

Defendants allege that Plaintiff has not exhausted his administrative remedies for the claims asserted in the Amended Complaint and that his action must be dismissed on that basis. They cite the "total exhaustion" doctrine set forth in *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189 (10th Cir. 2004) in support of this proposition.  Defendants point to several

---

[6](...continued)
based on allegedly unconstitutional conditions resulting from policies allegedly promulgated and implemented by Defendants.

grievances filed by Plaintiff which were either not appealed or submitted on obsolete forms. *See* Defendants' Motion at 5-6; Special Report [Doc. #25], Attachment 11 at 5, 8; Attachment 13 at 1, 14; Attachment 14 at 1; and Attachment 17 at 1. Some of these defective grievances do concern issues ultimately raised in Plaintiff's Amended Complaint. Despite these defective grievances, however, it is obvious that Plaintiff has meticulously followed the grievance procedure with regard to each claim asserted in his Amended Complaint and has thereby exhausted his administrative remedies. Copies of his Requests to Staff, Grievances, and Grievance Appeals are attached to Plaintiff's original Complaint, the Amended Complaint and the Special Report. In Plaintiff's Reply, Plaintiff has generated a chart referencing each claim, its corresponding exhaustion documents and where the documents are located in the record. Plaintiff's action is not subject to dismissal for failure to exhaust administrative remedies.

### **Qualified Immunity**

Qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Analysis of qualified immunity involves two steps. "The threshold inquiry is whether the alleged facts (or, on summary judgment, the evidenced facts) taken in the light most favorable to the plaintiff show a constitutional violation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

"On the other hand, if a violation could be made out on a favorable view of the parties'
submissions, the next, sequential step is to ask whether the right was clearly established."
*Id.* This question must be posed in the context of the particular case before the court, not as
a general, abstract matter: "The relevant, dispositive inquiry in determining whether a right
is clearly established is whether it would be clear to a reasonable officer [in the defendant's
position] that his conduct was unlawful in the situation he confronted." *Id.* at 202; *see also
Brosseau v. Haugen*, ___ U.S.___, 125 S.Ct. 596, 599 (2004) (emphasizing inquiry is to be
undertaken in light of the specific context of the case).

As discussed in further detail below, Plaintiff's constitutional claims may be resolved
at the first step. Because Plaintiff has not demonstrated any constitutionally prohibited
conduct, Defendants are entitled to summary judgment on each of Plaintiff's constitutional
claims under the traditional standard cited above. Therefore, this Court will address
Plaintiff's claims on the merits. *See Maestas v. Segura*, ___ F.3d ___, 2005 WL 1714313
at n. 2 (Jul. 25, 2005) ("Although Defendants couched their motion for summary judgment
in terms of qualified immunity, the district court ultimately applied the traditional summary
judgment standard in granting Defendants' Motion. We too apply that standard to resolve
this appeal against them.") (*citing Petersen v. Farnsworth*, 371 F.3d 1219, 1224 (10th Cir.
2004) (declining to consider defendants' entitlement to qualified immunity where no
constitutional violation occurred)); *see also Derrick v. Ward*, No. 03-6090, 2004 WL 38545
(10th Cir. Jan. 8, 2004) ("Because the district court found that defendants did not violate any
of [the plaintiff's] constitutional rights, it granted summary judgment in favor of defendants

10

on the merits without completing the qualified-immunity analysis.  We agree that summary

judgment on the merits is appropriate.") (unpublished op.)[7]

### Count I: Eighth and Sixth Amendment Claims

### Provision of Cleaning Products

Plaintiff seeks partial summary judgment on one of his Eighth Amendment claims:

that prisoners in administrative segregation are not provided with sanitary agents sufficient

to maintain a healthy environment.  Plaintiff states that he and other prisoners are given only

Simple Green with which to clean.  Plaintiff states that Simple Green is not designed to kill

fungus and certain viruses.  In support of his claim, Plaintiff refers to Attachment 47 of the

Special Report, a Material Safety Data Sheet for Simple Green.  The sheet describes Simple

Green:

> A concentrated hard surface cleaner and disinfectant for institutional
> degreasing, disinfecting, and deodorizing; effective against Human
> Immunodeficiency Virus (HIV-1), and gram positive and gram negative
> bacteria, including Staphylococcus aureus, Pseudomonas aeruginosa,
> Salmonella chloreraesuis, Streptococcus pyogenes, and Escherichia coli.

Special Report Attachment 47.

Liberally construed, this claim is based on Defendants' alleged failure to protect.

Deliberate indifference, not negligence or even gross negligence, regarding a substantial risk

of serious harm must be alleged in a failure to protect claim.  *See Farmer v. Brennan*, 511

U.S. 825, 842–83 (1994).  "Under the Eighth Amendment, jail officials must provide humane

---

[7]All unpublished opinions are cited for their persuasive value pursuant to Tenth Circuit Rule 36.3.

conditions of confinement  . . . by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir.2001) (internal quotations and citations omitted).  Thus, allegations that an inmate was forced to occupy a feces-encrusted cell, for example, may satisfy the first prong of an Eighth Amendment claim, which requires a showing that the alleged violation is sufficiently serious. *See id.*  Factors for a court to consider in determining whether a condition of confinement constitutes an Eighth Amendment violation include the length of time a prisoner is in contact with allegedly unconstitutional conditions and the degree of filth with which the prisoner must live. Conditions, such as a filthy cell, may be "tolerable for a few days." *Hutto v. Finney*, 437 U.S. 678, 687 (1978).  However, "the length of time a prisoner must endure an unsanitary cell is [simply] one factor in the constitutional calculus"; equally important is "the degree of filth endured." *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994).  In other words, "the length of time required before a constitutional violation is made out decreases as the level of filthiness endured increases." *Id.*; *see also Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) (holding that requiring inmates to work for even ten minutes in a well where they faced "a shower of human excrement without protective clothing and equipment would be inconsistent with any standard of decency") (internal quotation marks omitted).

In this case, the fact that administrative segregation inmates are given cleaning supplies demonstrates a lack of deliberate indifference to Plaintiff's safety.  Moreover, Plaintiff has not alleged that he is forced to live in a filthy cell.  Rather, Plaintiff is concerned that Simple Green may not kill every pathogen with which it comes into contact.  The fact

that Plaintiff is supplied with a disinfectant cleaning agent that kills many pathogens distinguishes this case from *McBride*.  Plaintiff has not shown that the failure to provide him with cleaning products of his choice subjects him to a substantial risk of serious harm.  It is therefore recommended that Plaintiff's Motion for Partial Summary Judgment be denied and that Defendants' Cross-Motion for Summary Judgment be granted on this claim.

**Danger Created by Forced Idle Time**

Plaintiff alleges that policies governing the conditions in the segregation unit forces inmates to be idle and leads to a generalized risk of violence.  Plaintiff alleges that Defendants, who allegedly promulgated and implemented policies which deprive inmates of recreational activities, are deliberately indifferent to the safety of inmates in administrative segregation.  Amended Complaint at 6-7.

The Eighth Amendment requires prison officials to "provide humane conditions of confinement," which include taking "reasonable measures to guarantee the safety of inmates." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted).  An inmate claiming that officials failed to prevent harm first "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Then the inmate must demonstrate that the officials had a "sufficiently culpable state of mind." *Id.*  "In prison condition cases, that state of mind is one of deliberate indifference to inmate health or safety."  *Farmer* at 832 (internal quotation marks and citation omitted).

Plaintiff contends that Defendants' policies pertaining to recreational activities in the segregation unit have led to violence in the DOC system.  Amended Complaint at 7.  Plaintiff received the following response to his grievance on this subject:

> In response to your grievance, please be advised, as I informed you in my response to your request to staff, the concern about inmate idleness is an ongoing issue and the staff is reviewing appropriate activities that could be implemented on Administrative Segregation.  The restrictive environment on your unit requires that we carefully consider the possibility that security could be compromised if leisure craft items were permitted.  The purpose of Administrative Segregation is to provide a structured environment for offenders who have demonstrated a failure to adjust to a less restrictive living environment.  Providing the amenities, available in General Population, to AS offenders, would be rewarding you for your inappropriate behavior, and negating the deterrent effect of restrictive housing.

Special Report Attachment 16 at 5.  This response is not indicative of deliberate indifference to prisoners' safety.  In fact, one reason for the lack of leisure craft items in Plaintiff's unit is the need for security.  The fact that conditions in administrative segregation are designed to deter unacceptable behavior indicates that Defendants are trying to reduce violence among prisoners.  Whether the policy is effective in achieving this goal is not germane to a finding of deliberate indifference or the lack thereof.  Plaintiff has shown neither a substantial risk of harm nor deliberate indifference with regard to this claim.

### **Dangerous Food Service Practices**

Plaintiff's allegations regarding food service are also liberally construed as a claim of failure to protect.  Plaintiff claims that food served to inmates in the segregation unit is served from "open style non-insulated metal racks on wheels, in which individual uncovered trays are placed after having been dished out in a central food service area on H-Unit."

14

Amended Complaint at 8.  The necessary delay in serving meals to each prisoner through a "bean hole" one prisoner at a time creates, according to Plaintiff, "an immediate danger to the health and well being of all prisoners who consume them[.]" Amended Complaint at 9.

The affidavits of Defendant Wagenknecht and Mr. Davison indicate that steam tables are used to keep food hot.  *See* Special Report, Attachments 37, 39.  The fact that serving the trays in the Unit takes "at least one hour" appears from Plaintiff's allegations to be the result of the design of the administrative segregation unit and not the result of prison officials' deliberate indifference  to danger from bacteria.

Significantly, Plaintiff has cited no instances where prisoners in administrative segregation have become sick from food poisoning.  *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (conditions indicating deliberate indifference to substantial threat of serious harm have been found to exist where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer).  Even if Plaintiff had become sick from food, however, that fact alone would not necessarily be sufficient to demonstrate that he had been  subjected to conditions posing a substantial risk of harm.  *Id.* at 682.

### Use of Restraints; Continual Lock-Down Policy

Plaintiff states that the use of restraints during the one hour each day he is allowed out of his cell violates his Eighth Amendment rights.  Amended Complaint at 7-8.  He further states that the "policy of 23 hours daily in-cell confinement" without "sufficient mental

diversion" results in physical and mental deterioration.  Amended Complaint at 10-11.  These claims are liberally construed as excessive force claims.

A prisoner alleging excessive force must state facts indicating that the prison official's use of force was objectively unreasonable and that the official's intent was for the purpose of causing harm.  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).  One alleging excessive force need not present facts of significant injury if he also presents facts showing that the official "maliciously and sadistically use [d] force to cause harm."  *Id.* at 9.  Of course, "*de minimis* uses of physical force . . . not of a sort repugnant to the conscience of mankind" are not actionable under the Eighth Amendment.  *Id.* at 10 (quotations omitted).

In his reply to Plaintiff's grievance concerning the use of restraints, Defendant Mullin stated, "restraints are utilized for DU offenders while on the exercise yard as a security measure."  He further states, "Clearly the use of restraints is intended to enhance the offender's security while on exercise yard, and reduce the potential threat to staff that could be presented if restraints were not in place."  Special Report, Attachment 15 at 4.

In this case, the use of restraints during inmates' hour of exercise is not objectively unreasonable.  The policy which governs placement of inmates in the Special Inmate Management System, OP-060106, identifies inmates who should be placed in such units:

> Special management inmates are those who have been violent towards other inmates or staff while incarcerated; have been determined to participate in gang related misconduct; have been determined to be a victim, potential victim, or predator; have special medical and mental health needs; require victim notification; or for other reasons as approved by the appropriate deputy director, chief administrator of classification and programs, private prison administrator, or administrator of classification.

Special Report, Attachment 5.  Clearly, some of the inmates in segregation at any one time are there because of their history of violence.  "Prison conditions may be restrictive and even harsh."  *Farmer*, 511 U.S. at 833 (internal quotations and citations omitted).  The use of restraints, while harsh, is not unreasonable given the types of prisoners confined in administrative segregation.  Moreover, Plaintiff has not alleged even *de minimis* injury resulting from the use of restraints.

For the same reasons, the lock-down policy is not objectively unreasonable.  Although Plaintiff alleges resulting physical and mental deterioration resulting from his being confined to his cell for twenty-three hours a day, he has shown no evidence of such injuries.  For these reasons, Defendants are entitled to summary judgment on Plaintiff's excessive force claims.

## Delays in Receiving Legal Mail

In Count I, Plaintiff also states that Defendants have adopted policies related to the handling of legal mail which often results in the delay of legal mail delivery.  The claim is liberally construed as a Sixth Amendment allegation of denial of access to the courts.

In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court held that, to succeed on a claim of denial of access to the courts by restricting access to legal materials, an inmate must establish "actual injury," *i.e.*, that "his efforts to pursue a legal claim" were "hindered" by the defendants' misconduct.  *Id.* at 351.  Notably, the Court offered two examples of when an inmate's efforts to pursue a legal claim would be "hindered."  First, the Court noted that an inmate "might show . . . that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal

17

assistance facilities, he could not have known." *Id.* Second, the Court noted that an inmate might show "that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.*

Plaintiff's allegations that his legal mail is sometimes delayed does not state a claim for which relief may be granted. Plaintiff has alleged no actual injury resulting from delays in receiving legal mail. This claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### Count II: First Amendment Claim

Plaintiff alleges that Defendants' policy precluding both direct and indirect use of the internet violates his First Amendment right of freedom of speech. Plaintiff states that the policy precludes him from receiving legal and religious materials. Additionally, Plaintiff states that he cannot add his name to internet lists seeking pen pal correspondence. Amended Complaint at 10.

In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court determined that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." The four-factor test supplied by the Court requires consideration and balancing of (1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether alternative means of exercising the constitutional right remain available to inmates, (3) any

effect accommodating the right would have on guards and inmates and on the allocation of prison resources generally, and (4) the absence of ready alternatives. *Id.* at 89-90.

> In response to Plaintiff's grievance on this issue, Defendant Mullin stated:
>
> In response to your grievance, please be advised, OSP-030117-01 clearly precludes direct or indirect access to internet services to include purchasing items through the internet, or subscribing to any internet services including any personal advertising or electronic mail. This stipulation is intended to prevent solicitation from the public through the internet. Your request to have access to a pen pal catalog for the purpose of placing an advertisement for a pen pal on the internet is denied.

Special Report, Attachment 19. According to Defendant Mullin, the policy concerning internet use is designed to prevent inmates from soliciting the public. Preventing inmates from soliciting the public is a legitimate governmental interest, and prohibiting inmate use of the internet is rationally related to this legitimate governmental interest. Moreover, Plaintiff has other readily available means of exercising his free speech rights. Although Plaintiff cannot obtain religious and legal documents from the internet, he does not claim that he is totally precluded from exercising his religious rights. The same is true of legal materials. Plaintiff does not contend that he has no other means of accessing legal materials.[8] Accommodating Plaintiff's request to use the internet would inevitably burden prison resources. In sum, the DOC policy prohibiting use of the internet is not an unconstitutional abridgement of Plaintiff's rights under the First Amendment.

---

[8] Any claim arising from Plaintiff's allegation that the policy in question precludes him from obtaining legal materials would be analyzed under the Sixth Amendment. As discussed *supra* at 17-18, Plaintiff could not succeed on such a claim unless he showed actual injury. Plaintiff has claimed no actual injury resulting from his inability to access legal materials from the internet.

## Count III: Due Process Claims

Plaintiff contends that the lack of educational opportunities and the denial of access to "educational/leisure library" to inmates assigned to administrative segregation violate his due process rights. Amended Complaint at 12-14. According to Plaintiff, Oklahoma law creates a liberty interest in educational programs and leisure library access.

Pursuant to *Sandin v. Conner*, 515 U.S. 472, 484 (1995), a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." In *Sandin* the Court relied on three factors to determine, at the summary judgment stage, that the prisoner had no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the prisoner's confinement and conditions in the general population showed that the prisoner suffered no "major disruption in his environment"; and (3) the length of the prisoner's sentence was not affected. *Id.* at 486-487.

Even assuming that the lack of educational programs and leisure library access in administrative segregation imposes an atypical and significant hardship in relation to the ordinary incidents of prison life, Plaintiff could prevail on his due process claim only by showing that he did not receive due process when he was assigned to administrative segregation. Plaintiff makes no such assertion. Moreover, it is undisputed that Plaintiff was transferred to the administrative segregation unit of OSP after an attempted escape from the Oklahoma State Reformatory. Plaintiff states that he was placed in administrative

segregation after "autonomously aborting what would have been a successful escape from the Oklahoma State Reformatory and later turning himself in."  Amended Complaint at 5-6. DOC Operating Procedure 060106  states that "[t]he Special Inmate Management System (SIMS) is established in order to maintain uniform procedures for managing inmates that are considered to be special management cases due to the risk posed to the public, employees, or other offenders."  Special Report, Attachment 5.  That Plaintiff has a history of attempted escape, which he freely admits, places him in the category of inmates posing risk to the public and employees.  In sum, Defendants are entitled to summary judgment on Plaintiff's due process claim.

### Count IV: Equal Protection Claim

Plaintiff alleges that his equal protection rights have been violated because he and other inmates confined in administrative segregation are not afforded the same educational opportunities or the same library privileges as other prisoners.  Amended Complaint at 18-19.

The threshold requirement of an equal protection claim is a showing that the government has discriminated among groups.  "Unless a legislative classification either burdens a fundamental right or targets a suspect class, it need only bear a rational relation to some legitimate end to satisfy the Equal Protection Clause."  *Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir. 2001) (internal quotations omitted).  Plaintiff does not allege either a violation of a fundamental right or membership in a suspect class.

In response to Plaintiff's grievance concerning his desire to pursue a Master's Degree while incarcerated, Defendant Mullins stated:

> In response to your grievance, please be advised, your desire to pursue a Master's Degree while incarcerated is commendable and I encourage you in this endeavor. Your assignment to Administrative Segregation is based on you past behavior which clearly does not reflect positive educational goals. Your behavior will determine your reassignment to a less restrictive environment, which will in turn afford you access to higher level academic opportunities. There is no requirement that the DOC provide graduate degrees to offenders, and it is the offender's responsibility to bear the cost of such courses. I refer you to OSP-090107-01 for clarification of the educational programs offered at OSP.

Special Report, Attachment 20 at 4. According to Defendant Mullins' response, inmates in administrative segregation are not allowed to pursue advanced degrees. This classification bears a rational relation to a legitimate end – behavior modification. If Plaintiff were to achieve a higher classification based on improved behavior, he would then be able to pursue his goals.

In response to Plaintiff's grievance regarding access to the leisure library Defendant Mullins stated:

> In response to your grievance, please be advised, as stated in OSP-030116-01, OSP is considered a lock down facility, therefore, all housing units will be provided library services through a traveling cart system that draws from the centralized collection. You may request a specific book from the main library, which will be delivered to you by cart or other distribution method. Library materials will be delivered on an established schedule every two weeks.

> I can also advise that recently, the library tech was out of the facility due to illness, which may have caused some slight interruption in services. Your unit reports that during this time there was a sufficient supply of books available to meet the needs of offenders who requested books.

Special Report, Attachment 21 at 4. This response indicates that inmates assigned to administrative segregation do, in fact, have access to the leisure library. Moreover, all inmates assigned to OSP have the same access. Accordingly, Plaintiff's claim regarding

access to the leisure library is without merit.  Defendants are entitled to summary judgment on Plaintiff's equal protection claims.

### Count Five: Treaty Violations

Plaintiff contends that Defendants have violated his rights under the International Covenant on Civil and Political Rights.  According to Plaintiff, this treaty provides in part:

> No person under any form of detention or imprisonment shall be subjected to torture or to cruel and unusual punishment.  No circumstances whatever may be invoked as a justification for torture or other cruel, inhuman or degrading treatment or punishment.

Amended Complaint at 19.

In a recent Tenth Circuit case, the Court declined "to determine whether claims alleging violations of treaty rights may be brought under § 1983." *Archilta v. Oklahoma*, No. 04-6125, 2005 WL 139179 (Jan. 24, 2005) (unpublished op.)  Even if treaty-based claims are cognizable in a civil rights action, the claims would be subject to the same analysis used to determine whether conditions of confinement violate the Eighth Amendment because the same "cruel and unusual" standard was adopted by the treaty signatories.  As discussed above, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims.  Therefore, they are also entitled to summary judgment on Plaintiff's claims in Count V.

### RECOMMENDATION

It is recommended that Plaintiff's Motion to Strike [Doc. #38] be denied.  It is further recommended that Plaintiff's Motion for Partial Summary Judgment [Doc. #39] be denied. It is recommended that Plaintiff's claim regarding delay of prison legal mail be dismissed

pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Finally, it is recommended that Defendants' Cross-Motion for Summary Judgment [Doc. #50/64] be granted  as to all remaining claims.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by September __8th__, 2005.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __19th__ day of August, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE